UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE REVOLUTION FMO, LLC a/k/a ) <br> THE REVOLUTION MO, LLC ) <br>   A Limited Liability Company ) <br> ) <br> ) <br>             Plaintiff, ) <br>      v. ) <br> ) <br> MARVIN MITCHELL, ) <br> ) <br>         Defendant. | Case No.  4:17-cv-2220 <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, The Revolution FMO, LLC ("The Revolution"), for its Complaint against Defendant, Marvin Mitchell ("Mitchell"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for nationwide injunctive relief and damages to stop Mitchell's misappropriation, continued use, and threatened dissemination of The Revolution's trade secret, confidential, and proprietary information. Until recently, Mitchell had an affiliation agreement to serve as an Agent under The Revolution. As an agent under The Revolution, pursuant to confidentiality agreements, Mitchell was given access to The Revolution's database of proprietary resources.

2. The database contained The Revolution's carefully guarded business development methodologies that are unique to The Revolution and only accessible by duly authorized agents of the Revolution. The Revolution's business development methodologies were the result of years of work and constitute the DNA of The Revolution's business. Agents who strictly adhere to The Revolution's system have experienced a notable increase in business revenue. In Mitchell's case his

business increased more than 10 fold within his first two years of affiliation with the Revolution, resulting in an increase in paid premiums worth millions of dollars. If these business development methodologies and proprietary policies and procedures were to be obtained by The Revolution's competitors, The Revolution would be irreparably damaged.

3. On May 1, 2017, Mitchell published a book that is a copy and/or derivative of The Revolution's materials. While the parties corresponded in an effort to resolve this copyright infringement, on June 5 and 6, Defendant Mitchell met with The Revolution's competitor Advisors Excel. On June 22, Defendant Mitchell downloaded copies of The Revolution's confidential database of documents, including documents detailing its trade secret business methods. On July 20, Mitchell requested that he be released from his contract, indicating that he was becoming an agent of Advisors Excel. On August 1, Mitchell held a seminar utilizing in part The Revolution's proprietary methods. The Revolution fears that its proprietary information and intellectual property, including its trade secret business methods, have been, or soon will be, shared with its competitor Advisors Excel. The Revolution seeks injunctive relief and damages to prevent disclosure and unauthorized use of its intellectual property.

## THE PARTIES

4. Plaintiff, The Revolution FMO, LLC, is a limited liability company organized and existing under the laws of the State of California, having its principal place of business at 40 E. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89002.

5. The Revolution is engaged in the business of facilitating and developing support systems for insurance licensed agents in connection with the sale of insurance products, predominately Fixed Indexed Annuities. Based on years of experience and substantial investment of time and resources, The Revolution has developed a database of proprietary documents that outline

its internal policies, procedures, and sales methodology.  The Revolution's business development strategies are the DNA of the business.

6.      Certain forms and literary works incorporated in The Revolution's documents are the subject of Copyright Registration No. TXu-1-865-939, issued on May 1, 2013, and Copyright Registration No. TXu-1-875-708, issued on July 24, 2013.

7.      The Revolution is the exclusive licensee of Copyright Registration No. TXu-1-865-939 and TXu-1-875-708, and Copyright Registration No. TXu-1-875-708, issued on July 24, 2013. Any copyrightable materials contained in the database that are not the subject of The Revolution's license were made as "work for hire" by employees of The Revolution and are therefore owned by The Revolution under 17 U.S.C. § 101.

8.      Additional materials embodying The Revolution's business methods, including manuals, training materials, and "how to" guides for employees and agents are maintained as trade secrets.  These documents are clearly marked confidential.  Access is only provided to employees and agents subject to confidentiality agreements and is password protected.  These materials have not only been proven to increase revenue, but have also been subjected to extensive and costly regulatory review to ensure compliance with the various States' Department of Insurance regulations, Department of Securities regulations and various other self-regulatory bodies including the Financial Industry Regulatory Authority ("FINRA") in order to minimize risks of sales practice issues associated with the provision of financial services.  To The Revolution's knowledge, no other competitor within the industry has such a database of the 'how to" create and maintain the running of an insurance agent's business, coupled with a panoply of soup to nuts compliance reviewed material, nor such a coordinated business/compliance review of its methods and forms to ensure regulatory compliance . The Revolution's proprietary business methods are the result of years of

development and provide a significant competitive advantage.

9.      Marvin Mitchell is an individual, residing in the State of Missouri, who provides financial advice to clients regarding the investment of their monies.

## JURISDICTION AND VENUE

10.     This is a suit for copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"), trade secret misappropriation under the Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1836 and the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 417.455, *et. seq.*, and breach of contract.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has supplemental jurisdiction over The Revolution's state law claims under 28 U.S.C. § 1367(a) because these claims are directly related to the federal claims in this action within this Court's original jurisdiction and intertwined with the same case or controversy. The Revolution's common law claims are substantially related to The Revolution's claims arising under the Copyright Act and the DTSA.

12.     This Court also has subject matter jurisdiction under 28 U.S. Code § 1332.  The amount on controversy exceeds $75,000 exclusive of interest and costs and the claim arose in this district.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1400(a). Venue is also proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to The Revolution's claims occurred within this District.

14.     This Court has personal jurisdiction over Mitchell because Mitchell is a resident of the State of Missouri and has committed unlawful acts within this District.

**FACTUAL ALLEGATIONS**

15. The Revolution repeats and realleges each of the allegations contained in paragraphs 1 through 14.

16. On January 27, 2015, Mitchell, a licensed insurance agent, joined The Revolution as an independent contractor. Exhibit 1 (Agent Affiliation and Licensing Agreement).

17. Mitchell's contract with The Revolution included a confidentiality and nondisclosure provision. Exhibit 1. Pursuant to the terms of the contract, Mitchell acknowledged that he would receive access to "trade secrets, proprietary and confidential information…including, but not limited to…marketing data, client and or agent prospect lists, marketing, training, motivational material, trade secrets, and other confidential information unique to [The Revolution's] business." *Id*. at ¶2. Mitchell agreed that he would not "at any time use, reveal, or divulge any trade secrets, marketing methods, material, training material, seminars, or other confidential information or information generated by or for [The Revolution]." *Id*.

18. Mitchell further agreed that "any actual or threatened breach of these terms" would cause "immediate and irreparable harm and that money damages will not be adequate to compensate [The Revolution] or to protect and preserve the status quo." *Id*. at ¶4. Mitchell expressly consented to:

> "[T]he issuance of a temporary restraining order or preliminary or permanent injunction ordering: that Agent immediately return to [The Revolution] all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that Agent be enjoined and thereby restrained from using or disclosing any information contained in such records."

19. The Revolution subsequently updated its forms and asked agents to sign the current Agent Affiliation and Licensing Agreement, even if a prior contract had been signed. On April 14, 2016, Mitchell signed The Revolution's updated form. Exhibit 2. By signing this updated form,

Mitchell reaffirmed his agreement to maintain the confidentiality of The Revolution's intellectual property. *Id.*

20. Even before signing the Agent Affiliation and Licensing Agreement, when Mitchell first met with The Revolution to discuss a potential business relationship, Mitchell was required to sign a nondisclosure agreement. Exhibit 3 (Guest Nondisclosure Agreement). All potential agents are required to sign a nondisclosure agreement before being provided access to The Revolution's proprietary information.

21. Mitchell further agreed to indemnify The Revolution in the event of a breach of these terms. Exhibit 1 at ¶3; Exhibit 2 at ¶3; Exhibit 3 at ¶2.

22. On May 1, 2017, Mitchell published a book titled "Protecting your Retirement Nest Egg: What The Wall Street Brokers & Bankers Don't Want You to Know." The book is currently available for purchase through Amazon as well as other retailers. Exhibit 4 (Amazon Listing). The book "reveals strategies" relating to retirement planning, which Mitchell learned from The Revolution. Exhibit 4.

23. The book incorporates portions of The Revolution's literary works, which are the subject of Copyright Registration No. Txu-1-865-939, issued on May 1, 2013, and Copyright Registration No. TXu-1-875-708, issued on July 24, 2013. Exhibit 5 (Copyright Registrations). Even where text has been modified, the modifications are minor. If not a direct copy, Mitchell's book is, at the very least, derivative of The Revolution's registered work.

24. After publishing his book, Mitchell received a cease and desist letter and The Revolution immediately worked to remove access to the infringing work. Exhibit 6 (Cease and Desist letter).

25. While the Parties were corresponding regarding the infringement, on June 5 and 6,

6

Mitchell attended a recruiting event with The Revolution's competitor Advisors Excel.

26. On June 22, 2017, The Revolution's internal records indicate that Mitchell's assistant, Arlene Hudson, systematically downloaded The Revolution's entire database of proprietary material, containing The Revolution's secret business development methodologies as well as secret policies and procedures designed to reduce risk and improve client service.

27. The Revolution's information technology department maintains a record of access to its proprietary documents. The database is password protected. Only employees, agents, and staff that have signed confidentiality and nondisclosure agreements are provided access to the database. Prior to receiving access to the database, Arlene Hudson signed a confidentiality and nondisclosure agreement. Exhibit 7 (Hudson Agreement). The Revolution maintains a record of the account used to access the database, when the materials were accessed, and whether materials were viewed and/or downloaded.

28. The records from June 22, 2017 indicate that Mitchell's assistant, Arlene Hudson, logged into The Revolution's database and downloaded a copy of the entire database systematically in the order the documents appear.

29. Mitchell's assistant downloaded one hundred and thirty-four files over the course of eight minutes on June 22, 2017, from 6:58 P.M. to 7:06 P.M. Exhibit 8 (Record of Arlene Hudson's Recent Activity Within The Revolution's Proprietary Database).

30. If the files were accessed to perform work related tasks, the employee would naturally take time reviewing the document and performing that task. The fact that one hundred and thirty-four files were downloaded in order in less than ten minutes indicates that the documents were being accessed merely to download and save a copy of the files.

31. Because the database may be updated at various times and is accessible to agents

and their staff at any time there would be no reason to download a complete copy of the database. To the best of The Revolution's knowledge, Mitchell and his staff had never downloaded a complete copy of the database before June 22, 2017.

32. After downloading a copy of The Revolution's entire database of proprietary materials, on July 20, 2017, Mitchell informed The Revolution that he would be transferring to The Revolution's competitor, Advisors Excel and that he was terminating The Revolution's Agent Affiliation and Licensing Agreement. Exhibit 9 (Agent Transfer Acknowledgement).

33. Pursuant to the terms of Mitchell' agreement, Mitchell's license to utilize The Revolution's material was immediately revoked, and his access to The Revolution's database denied.

34. When an agent leaves The Revolution for a competitor, the Agent Transfer Acknowledgement form is a standard form used to verify that the agent has returned all of The Revolution's Intellectual Property. *Id.* Mitchell provided to The Revolution a form signed by him representing that all materials had been returned, but The Revolution has not received any returned materials to date. *Id.*

35. Additionally, the Agent Transfer Acknowledgement form requires the Agent's new affiliated firm ("Receiving FMO") to sign the same document, verifying that the "Receiving FMO" will not accept proprietary materials from the agent. *Id.* In other words, the company verifies that, even if the agent attempted to bring proprietary materials with them, the company would return any materials "marked as confidential" to the agent and not use them. *Id.*

36. The Revolution typically receives this form fully executed. In fact, The Revolution has received the form signed by Advisors Excel for other agents that have left The Revolution and joined Advisors Excel in the past. Here, the Agent Transfer Acknowledgement form was not signed

8

by Advisors Excel nor did they submit the form directly from them to The Revolution's licensing department as is the normal course of business. *Id*. The fact that Advisors Excel did not execute that document, and that document was not received directly from Advisors Excel, combined with the fact that Mitchell misrepresented that he had already returned all Revolution documents when he had not, indicate an intent by Mitchell to misappropriate The Revolution's trade secrets.

37. The Revolution fears that its trade secret database was downloaded not only for use by Mitchell, but also for the purpose of its proprietary information and trade secret business methods being provided to its competitor, Advisors Excel.

38. Despite Mitchell's representation that he had returned The Revolution's intellectual property and would discontinue use of the trade secrets and copyrighted works (Exhibit 9), Mitchell has retained and continues to use The Revolution's intellectual property.

39. On August 1 and August 2 and August 3 Mitchell conducted seminars in St. Louis that utilized portions of The Revolution's intellectual property. On August 1, Mitchell made available in public view, with access to seminar attendees, multiple copies of his book. Further, he did so with intent for personal financial gain.

40. Mitchell has additional seminars scheduled in August, and routinely holds seminars on a monthly basis. By continuing to provide unauthorized public performances of The Revolution's works and continuing to use The Revolution's trade secret business methods, Mitchell has caused and continues to cause The Revolution irreparably injury.

41. Unless this Court restrains Mitchell from committing further acts of misappropriation, Plaintiffs will continue to suffer irreparable injury for which they have no adequate remedy at law. Likewise, unless this Court enjoins Mitchell from disclosing The Revolution's trade secrets to its competitor Advisors Excel, The Revolution will suffer irreparable

harm.

## COUNT I

## COPYRIGHT INFRINGEMENT UNDER THE COPYRIGHT ACT

42. The Revolution incorporates by reference the allegations contained in paragraphs 1 through 41.

43. Mitchell has infringed The Revolution's copyrights by continuing to use, publish, perform, and disseminate to the public proprietary information and materials developed by and belonging to The Revolution, including, but not limited to, materials that are the subject of Copyright Registration No. Txu-1-865-939 and Copyright Registration No. TXu-1-875-708. Exhibit 5.

44. Mitchell's continued distribution and sales of the book "Protecting your Retirement Nest Egg: What The Wall Street Brokers & Bankers Don't Want You to Know" as well as seminars and presentations utilize The Revolution's copyrighted materials without a license, authorization, or consent. Each use of The Revolution's materials constitutes a separate and distinct act of infringement.

45. Mitchell had knowledge of The Revolution's rights in the materials and expressly agreed not to use these materials outside of the scope of his role as an independent contractor for The Revolution. Mitchell's infringement is intentional and willful.

46. As a direct and proximate result of the infringement by Mitchell, The Revolution is entitled to damages and to Mitchell's profits in amounts to be proven at trial. Alternatively, The Revolution is entitled to maximum statutory damages and attorneys' fees and costs pursuant to 17 U.S.C. §505 and the express terms of Mitchell's agreements with The Revolution. Exhibits 1 and 2.

47. The Revolution is additionally entitled to liquidated damages in the amount of

$20,000 per attendee for Mitchell's seminars incorporating The Revolution's copyrighted works, including, but not limited to, seminars conducted on August 1, 2, and 3 pursuant to the terms of Mitchell's agreement with The Revolution. Exhibit 1 at ¶6; Exhibit 2 at ¶6.

48. All copies of Mitchell's book "Protecting your Retirement Nest Egg: What The Wall Street Brokers & Bankers Don't Want You to Know" should be impounded pending resolution of this matter pursuant to 17 U.S.C. §503. These unauthorized copies should be destroyed upon a finding of infringement pursuant to 17 U.S.C. §503.

49. As a result of Mitchell's conduct, The Revolution has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. The Revolution is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Mitchell's continuing infringement.

## COUNT II

### TRADE SECRET MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT

50. The Revolution repeats and realleges the allegations contained in paragraphs 1 through 49.

51. The Revolution developed its database over the course of many years based upon decades of experience within the industry. These business methods, training materials, manuals, and forms have not only been shown to enhance sales, but have also been subjected to review by counsel and FINRA for regulatory compliance. This compliance review required a substantial investment of time and resources and provides immense value by reducing the potential risk associated with the provision of financial services.

52. The information contained within the database is not readily ascertainable and would

require a substantial investment of resources to develop independently.  The Revolution took steps to ensure the secrecy and confidentiality of its trade secrets by limiting access to its database to employees, agents, and staff subject to confidentiality and nondisclosure agreements.  The Revolution utilized password protection to limit access to the database and retained records relating to access to the database to identify any potential breach of the system.

53. The Revolution derives great value from the fact that this information is not readily ascertainable by others, particularly competitors.  The information provides a significant competitive advantage.

54. Mitchell has unlawfully retained and used trade secrets from The Revolution's database.  The Revolution's believes that Mitchell intends to enter into an agreement with The Revolution's competitor, Advisors Excel, to perform the same services previously performed for The Revolution.  Mitchell will improperly use and disclose The Revolution's trade secrets for Mitchell's own financial gain and for the benefit of Advisors Excel.

55. Mitchell's misappropriation and threatened dissemination of The Revolution's trade secret and proprietary information constitutes a violation of the Defend Trade Secrets Act, 18 U.S.C. 1836(b)(1).

56. Mitchell's conduct has caused and will continue to cause irreparable harm for which The Revolution has no adequate remedy at law.  Mitchell should be immediately enjoined from any continued use of The Revolution's intellectual property and should be enjoined from sharing the unlawfully retained information with others, including Advisors Excel.

57. The Revolution is entitled to an award of damages in the amount of The Revolution's actual losses and Mitchell's unjust enrichment, including attorneys' fees and costs.

58. Mitchell's coordinated effort to misappropriate, use, and disseminate The

Revolution's trade secrets despite an express agreement not to divulge such information constitutes outrageous conduct warranting an award of punitive damages.

## COUNT III

### TRADE SECRET MISAPPROPRIATION
### UNDER THE MISSOURI UNIFORM TRADE SECRETS ACT

59. The Revolution repeats and realleges the allegations contained in paragraphs 1 through 58.

60. Mitchell's misappropriation and threatened dissemination of The Revolution's trade secret and proprietary information constitutes a violation of the Missouri Uniform Trade Secrets Act, Mo. Rev. State §417.455.

61. Mitchell's conduct has caused and will continue to cause irreparable harm for which The Revolution has no adequate remedy at law. Mitchell should be immediately enjoined from any continued use of The Revolution's intellectual property and should be enjoined from sharing the unlawfully retained information with others, including Advisors Excel.

62. The Revolution is entitled to an award of damages in the amount of The Revolution's actual losses and Mitchell's unjust enrichment, including attorneys' fees and costs.

63. Pursuant to Mo. Rev. Stat. §417.457.1, Mitchell's coordinated effort to misappropriate, use, and disseminate The Revolution's trade secrets despite an express agreement not to divulge such information constitutes outrageous conduct warranting an award of punitive damages.

## COUNT IV

### BREACH OF CONTRACT

64. The Revolution repeats and realleges the allegations contained in paragraphs 1

through 63.

65. Mitchell's agreements with The Revolution are valid and enforceable. The Revolution has fully performed all acts, conditions, and promises required in accordance with the terms and conditions of the agreements. Exhibits 1, 2, and 3.

66. Mitchell has breached, is breaching, and threatens to breach the agreements by continuing to use, perform, publish, and disseminate The Revolution's confidential and proprietary information without a license, authorization, or consent. This includes conducting seminars that utilize The Revolution's proprietary information as well as continued distribution and sales of Mitchell's book, which incorporates the Revolution's intellectual property.

67. The Revolution has suffered damages as a result of Mitchell's breach and continued breach in an amount to be proven at trial. These damages include liquidated damages in the amount of $20,000 per attendee for Mitchell's seminars incorporating The Revolution's copyrighted works, including, but not limited to, seminars conducted on August 1, 2, and 3 pursuant to the terms of Mitchell's agreement with The Revolution as well as attorneys' fees and costs. Exhibit 1 at ¶6 Exhibit 2 at ¶6.

68. The Revolution faces irreparable injury and is threatened with the loss of its competitive advantage and goodwill unless Mitchell is enjoined and restrained by this Court. As such, based on Mitchell's breach of his agreements with The Revolution, The Revolution is entitled to injunctive relief pursuant to the express terms of the agreements.

**WHEREFORE**, The Revolution respectfully requests judgement against Mitchell as follows:

(I) Mitchell, his agents, employees, and all persons acting under his permission, authority, direction, or consent, be enjoined and restrained from using, infringing, disclosing, or disseminating in any manner, The Revolution's intellectual property, including The Revolution's copyrighted works and trade secrets;

(II) Mitchell be ordered to pay damages to be determined at trial and/or statutory damages, pursuant to 17 U.S.C. § 504(c);

(III) An order requiring all copies of documents or files containing The Revolution's intellectual property to be seized or otherwise turned over to the Court;

(IV) An order requiring all copies of Mitchell's book containing The Revolution's copyrighted works to be impounded and destroyed;

(V) Mitchell be ordered to pay costs, including a reasonable attorney's fee, pursuant to 17 U.S.C. § 505 and the express terms of the agreements entered into between the Parties; and

(VI) Such further relief as this Court deems just and equitable.

Dated: August 7, 2017                  ARMSTRONG TEASDALE LLP

                                             BY: /s/Jessica M. Mendez
                                                  Eric M. Trelz (37248MO)
                                                  Jessica M. Mendez (63094MO)
                                                  7700 Forsyth Blvd., Suite 1800
                                                  St. Louis, Missouri 63105
                                                  314.621.5070
                                                  314.621.5065 (facsimile)
                                                  etrelz@armstrongteasdale.com
                                                  jmendez@armstrongteasdale.com

                                                  Ruthann Granito (*pro hac vice pending*)
                                                  Ruthann Granito Esquire, P.C.
                                                  110 East 59th Street, 22nd Floor
                                                  New York, New York 10022
                                                  212.980.4052
                                                  RG@granitocorporateadvisory.com

                                                  ATTORNEYS FOR PLAINTIFF