UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE REVOLUTION FMO, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17CV2220 HEA |
| | ) |
| MARVIN MITCHELL, | ) |
| | ) |
| Defendant, | ) |

## OPINION, MEMORANDUM AND ORDER

### Introduction

This matter is before the Court on Defendant's Motion to Dismiss or for a More Definite Statement, [Doc. No. 40]. Plaintiffs oppose the Motion. Defendants have filed a Reply to the Opposition, and Plaintiff has, with leave of Court, filed a Sur-Reply. For the reasons set forth below, the Motion is denied in part and granted in part.

### Facts and Background

Plaintiff's Complaint alleges the following:[1]

The Revolution FMO, LLC, is a California limited liability company with its principal place of business in Nevada. The Revolution is engaged in the business

---

[1] The recitation of facts is taken from Plaintiff's Complaint and is set forth for the purposes of the pending motion to dismiss. The recitation does not relieve any party of the necessary proof of any stated fact in future proceedings.

1

of facilitating and developing support systems for insurance licensed agents in connection with the sale of insurance products, predominately Fixed Indexed Annuities. Defendant Marvin Mitchell, a licensed insurance agent, provides financial advice to clients regarding investments.

The Revolution maintains a database containing documents regarding proprietary business development methodologies that are unique to The Revolution and only accessible by duly authorized agents of The Revolution. The database is password protected. Only employees, agents, and staff that have signed confidentiality and nondisclosure agreements are provided access to the database. The Revolution's information technology department maintains a record of access to its proprietary documents. These access records include the account used to access the database, when the materials were accessed, and whether materials were viewed and/or downloaded. The database may be updated at various times and is accessible to agents and their staff at any time.

The Revolution's business development methodologies are the result of years of work and "constitute the DNA of The Revolution's business." Agents who use The Revolution's system have experienced increased business revenue. The Revolution would be irreparably damaged if these business development methodologies and proprietary policies and procedures were to be obtained by their competitors.

Certain forms and literary works incorporated in The Revolution's document database are the subject of Copyright Registration No. TXu-1-865-939, issued on May 1, 2013, and Copyright Registration No. TXu-1-875-708, issued on July 24, 2013. The Revolution is the exclusive licensee of Copyright Registration No. TXu-1-865- 939 and TXu-1-875-708, and Copyright Registration No. TXu-1-875-708, issued on July 24, 2013. Any copyrightable materials contained in the database that are not the subject of The Revolution's license were made as "work for hire" by employees of The Revolution and are therefore owned by The Revolution under 17 U.S.C. § 101.

All potential The Revolution agents are required to sign a nondisclosure agreement before being provided access to The Revolution's proprietary information. Mitchell signed such a nondisclosure agreement when he first met with The Revolution to discuss a potential business relationship. When Mitchell subsequently joined The Revolution as an independent contractor on January 27, 2015, his contract with The Revolution, entitled "Agent Affiliation and Licensing Agreement" ("the Agreement") included a confidentiality and nondisclosure provision. Pursuant to the terms of the contract, Mitchell acknowledged that he would receive access to "trade secrets, proprietary and confidential information … including, but not limited to … marketing data, client and or agent prospect lists, marketing, training, motivational material, trade secrets, and other confidential

information unique to [The Revolution's] business." Mitchell agreed that he would not "at any time post affiliation with [The Revolution] use, reveal, or divulge any trade secrets, marketing methods, material, training material, seminars, or other confidential information or information generated by or for [The Revolution]." Mitchell further agreed that "any actual or threatened breach of these terms" would cause "immediate and irreparable harm and that money damages will not be adequate to compensate [The Revolution] or to protect and preserve the status quo." Mitchell consented to:

> "[T]he issuance of a temporary restraining order or preliminary or permanent injunction ordering: that Agent immediately return to [The Revolution] all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that Agent be enjoined and thereby restrained from using or disclosing any information contained in such records."

On April 14, 2016, Mitchell signed a nearly identical, updated agreement with The Revolution that contained the same confidentiality and indemnification provisions.

On May 1, 2017, Mitchell published a book titled "Protecting your Retirement Nest Egg: What The Wall Street Brokers & Bankers Don't Want You to Know," which is currently available for purchase. The book "reveals strategies" relating to retirement planning, which Mitchell learned from The Revolution. The book incorporates portions of The Revolution's literary works, which are the subject of Copyright Registrations No. Txu-1-865-939 and TXu-1-875-708. Where text has been modified from the registered works, the modifications are minor.

Mitchell's book is a copy, or at least derivative, of The Revolution's registered work.

After publishing his book, Mitchell received a cease and desist letter and The Revolution immediately worked to remove access to the infringing work.

While the Parties were corresponding regarding the infringement, on June 5 and 6, Mitchell attended a recruiting event with The Revolution's competitor Advisors Excel.

On June 22, 2017, The Revolution's records indicate that Mitchell's assistant, Arlene Hudson, who had also signed a confidentiality and nondisclosure agreement prior to receiving access to the database, downloaded The Revolution's entire database of proprietary material, containing The Revolution's secret business development methodologies as well as secret policies and procedures designed to reduce risk and improve client service. The records indicate that over the course of eight minutes on June 22, 2017, from 6:58 P.M. to 7:06 P.M., Hudson logged into The Revolution's database and downloaded a copy of the one hundred and thirty-four files comprising the entire database, in the order the documents appeared. To the best of The Revolution's knowledge, Mitchell and his staff never downloaded a complete copy of the database before June 22, 2017.

On July 20, 2017, Mitchell informed The Revolution that he would be transferring to The Revolution's competitor, Advisors Excel, and that he was

terminating the Agreement. Pursuant to the terms of the Agreement, Mitchell's license to utilize The Revolution's material was immediately revoked, and his access to The Revolution's database denied. Mitchell also signed and provided to The Revolution an Agent Transfer Acknowledgement form representing that all of The Revolution's intellectual property materials had been returned. However, The Revolution has not received any returned materials to date. Additionally, although the Agent Transfer Acknowledgement form requires the agent's new affiliated firm ("Receiving FMO") to sign the same document, verifying that the "Receiving FMO" will not accept proprietary materials from the agent, Advisors Excel did not sign Mitchell's document, nor Excel nor did they submit the form directly from them to The Revolution's licensing department as is the normal course of business. The Revolution fears that its trade secret database was downloaded not only for use by Mitchell, but also for the purpose of its proprietary information and trade secret business methods being provided to its competitor, Advisors Excel.

Despite Mitchell's representation that he had returned The Revolution's intellectual property and would discontinue use of the trade secrets and copyrighted works, Mitchell has retained and continues to use The Revolution's intellectual property.

On August 1-3, 2017 Mitchell conducted seminars in St. Louis that utilized portions of The Revolution's intellectual property. On August 1, Mitchell made

available in public view, with access to seminar attendees, multiple copies of his book with intent for personal financial gain. Mitchell routinely holds seminars on a monthly basis.

The Revolution alleges that they have suffered and continue to suffer irreparable injury as a result of Mitchell's actions.

The Revolution's Complaint alleges Copyright Infringement under the Copyright Act 17 U.S.C. § 101 *et seq.* (Count I); Trade Secret Misappropriation under the Defend Trade Secrets Act 18 U.S.C. § 1836 (Count II); Trade Secret Misappropriation under the Missouri Uniform Trade Secrets Act (Count III); Breach of Contract (Count IV).

Defendant Mitchell moves to dismiss pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted, or alternatively, moves for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. Defendant argues that each claim is insufficiently pled as a matter of law and accordingly, must be dismissed or made more definite.

**Motion to Dismiss Standard**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. See *Carton v. General Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010); *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). To

survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." *Id*. at 555. Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens,* 619 F.3d 867, 872–73 (8th Cir. 2010).

A complaint must be liberally construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp*., 514 F.3d 801, 806 (8th Cir. 2006). The Court must accept the facts alleged as true, even if doubtful. *Twombly*, 550 U.S. at 555. Thus, a well-pleaded complaint may proceed even if it appears that recovery is very remote or unlikely. *Id.*; *Young*, 244 F.3d at 627.

## Discussion

**Copyright Claim – Count I**

To establish a claim for copyright infringement, a plaintiff must prove (1) that they own a valid copyright, and (2) that the defendant copied constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Defendant argues (1) that the complaint does not limit its copyright infringement to Plaintiff's copyrighted works, (2) that the complaint does not allege the specific parts of Plaintiff's copyrighted works which were infringed, and (3) that the complaint does not sufficiently demonstrate that the copied portions were "original" elements.

Defendant's first claim addresses a section of the complaint which states:

> Mitchell has infringed The Revolution's copyrights by continuing to use, publish, perform and disseminate to the public proprietary information and materials developed by and belonging to The Revolution, including, but not limited to, materials that are the subject of Copyright Registration No. Txu-1-865-939 and Copyright Registration No. Txu-1-875-708.

Defendant argues that referencing materials "including, but not limited to" the registered materials, "Plaintiff fails to allege facts demonstrating that it meets the statutory criteria for bringing its infringement claim here, *except insofar as the claim is premised on works subject of the Registrations*." (Emphasis added). The Court is unable to ascertain whether Plaintiff conflates its copyright claim with its trade secret or contract claims, or whether it is referring
g to other copyrights not listed in the complaint. In any case, Plaintiff's copyright claim is limited to works that are the subject of the enumerated registrations, attached to the complaint as Exhibit 5.

Defendant next argues that the complaint does not sufficiently specify the parts of the copyrighted works that were allegedly infringed upon, and therefore

9

does not provide proper notice of "what, specifically, he is alleged to have infringed." For his contention, Defendant cites *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052 (N.D. Cal. 2016). In *Media.net*, the plaintiff identified some, but not all portions of HTML code allegedly copied by the defendant. The Northern District of California held that dismissal was warranted based on the plaintiff's failure to identify each allegedly-copied section of HTML code, but granted the plaintiff "leave to amend to identify each portion of the HTML code [d]efendant allegedly infringed." *Id.* at 1068. On the other hand, Plaintiff cites various cases where pleadings that did not contain a specific, exhaustive list of allegedly infringed materials were nonetheless sufficient. *E.g. Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780 JF (RS), 2009 WL 1299698 (N.D. Cal. May 11, 2009) ("Facebook need not allege the exact content that Defendants are suspected of copying at this stage of the proceedings. There is no requirement that copyright claims must be pled with particularity . . . Defendants need only access and copy one page to commit copyright infringement."); *Sony BMG Music Entm't v. Braun*, No. 4:08-CV-338CEJ, 2008 WL 5135105 (E.D. Mo. Dec. 5, 2008) ("Although plaintiffs have not identified every sound recording that defendant allegedly distributed over the Internet, plaintiffs' partial song list provides defendant with fair notice of the copyright infringement claim against her."). Plaintiff has provided Defendant with notice of

10

which works were allegedly infringed by specifying the pertinent copyrights, which contain titles of the works in question. At this early stage, Plaintiff needs not allege with exacting specificity each section or part of its work that was copied, and any confusion about the works at issue can be resolved in discovery.

Defendant also claims that Plaintiff fails to plead that Defendant copied original elements of its works. Plaintiff claims it does not need to plead originality based on the presumed validity of registered works. Plaintiff's pleading alleges, however, that Defendant's book "incorporates *portions* of The Revolution's literary works" that are subject of the copyright registrations, but does not plead any facts relating to the originality of any of those portions. (Emphasis added). Validity of a copyright does not extend copyright protection to every element of the work. *Feist*, 499 U.S. at 348 ("Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author."). Because the entirety of Plaintiff's copyrighted works are not necessarily original, and because Plaintiff fails to identify any relevant facts about even one portion of its works which were copied, the Court cannot reasonably infer that any of the copied portions pass the originality requirement. Plaintiff's copyright claim will be dismissed with leave to amend.

**Trade Secret Misappropriation Claims – Counts II and III**

In two separate counts, Plaintiff claims Defendant misappropriated and threatened to disseminate Plaintiff's trade secrets and confidential information in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) (DTSA) and the Missouri Uniform Trade Secrets Act, § 417.455 RSMo (MUTSA), respectively.

In order to prevail on a claim for misappropriation of a trade secret under DTSA and MUTSA, Plaintiff must show: (1) the existence of a protectable trade secret; (2) misappropriation of those trade secrets by Defendant; and (3) damages. *Phyllis Schlafly Revocable Tr. v. Cori*, No. 4:16CV01631 JAR, 2016 WL 6611133, at *2 (E.D. Mo. Nov. 9, 2016). Under DTSA, Plaintiff must also show that "the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

Defendant argues that Plaintiff "surrendered its ownership interest in its alleged trade secrets" by subjecting the information to review by "FINRA for regulatory compliance." As such, Defendant claims, Plaintiff's proprietary information cannot constitute protectable trade secrets. However, the test under both DTSA and MUTSA is only whether the owner of the trade secrets has taken "reasonable" steps to maintain the secrecy of the information. Plaintiff robustly pleads the measures taken to maintain the secrecy of their proprietary information. The question of whether Plaintiff took reasonable measure to protect the secrecy of

its information when it disclosed it to a consulting organization is more appropriate for the summary judgment stage.

Defendant also claims that Plaintiff's description of the trade secrets in questions is plainly over-broad. Plaintiff included a log of all of its database files that were downloaded by Defendant's assistant and further described the documents containing secrets as "business methods, training materials, manuals and forms." As in its copyright claim, Plaintiff has provided Defendant with sufficient notice of the types of trade secrets involved, and the scope of the documents containing these trade secrets. Questions about the particular trade secrets and documents at issue can be resolved in discovery.

Applicable only to Plaintiff's DTSA claim is Defendant's assertion that Plaintiff fails to plead that the trade secrets in question are used in or intended for use in interstate or foreign commerce, as require by the DTSA. Plaintiff claims that the Complaint implicates interstate commerce because Plaintiff, a California LLC, licensed its materials to Defendant, an individual in Missouri. Plaintiff also pleaded that its trade secrets had been reviewed to "ensure compliance with the various State[]" regulations. The Court can infer from the Complaint that Plaintiff developed its trade secrets outside of Missouri, for use in not only Missouri, but also other states. Defendant's claim that "presumably . . . the alleged trade secret

material was developed separately for each state" is not persuasive in light of the Court's obligation to grant reasonable inferences in favor of the Plaintiff.

The Complaint sufficiently pleads the elements of both DTSA and MUTSA claims. The Motion to Dismiss is denied with respect to Plaintiff's DTSA and MUTSA claims.

**Breach of Contract Claim – Count IV**

Under Missouri law[2], a party claiming breach of contract must show (1) the existence of a valid contract; (2) the rights of plaintiff and obligations of defendant under the contract; (3) a breach by defendant; and (4) damages resulting from the breach. *Clayborne v. Enter. Leasing Co. of St. Louis, LLC*, 524 S.W.3d 101, 106 (Mo. Ct. App. 2017). Plaintiff claims that Defendant breached non-disclosure provisions of the Agreement by continuing to "use, perform, publish and disseminate" Plaintiff's confidential and proprietary information without license, authorization or consent.

In his initial memo supporting the Motion to Dismiss, Defendant asserts that Plaintiff refuses to terminate his affiliation with Plaintiff, and therefore, the contractual affiliation prohibiting him from using, revealing, or divulging

---

2 The Affiliation and Licensing Agreement does not contain a choice of law provision. Plaintiff pleads both supplemental and diversity jurisdiction. In either case, Missouri law applies to the contract claim. *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 624 n. 9 (8th Cir. 2003) ("Nevertheless, as in a diversity case, a federal court exercising supplemental jurisdiction is bound to apply the substantive state law governing the claims.").

Plaintiff's information "post affiliation" is inapplicable, and accordingly, there is no breach.

Plaintiff responds by noting that the Agreement provides that its consent to use its information is "revocable at will, and in any event no later than upon [Defendant]'s notice of intent to cease his affiliation with" Plaintiff.

Apparently conceding this argument, in his sur-reply, Defendant instead claims that two sentences in the non-disclosure section of the Agreement stand for "differing restrictions [relating to the use of Plaintiff's information] placed on licensees at different times," namely, pre- and post-affiliation with Plaintiff. Again, Defendant seems to argue that Plaintiff's claim of breach is expressly contradicted by the contract provisions.

Plaintiff's Complaint adequately pleads a breach of contract claim. Whether Plaintiff will prevail, based on the contract provisions of the Agreement, is not suitable for the Court to decide at the Motion to Dismiss stage. The Motion to Dismiss the breach of contract claim is denied.

**Motion for a More Definite Statement**

Defendant also moves that the Court order a more definite statement as to the counts for which the Motion to Dismiss is not granted. The Federal Rules of Civil Procedure provide that a party may move for a more definite statement if "a pleading ... is so vague or ambiguous that a party cannot reasonably be required to

frame a responsive pleading." Fed.R.Civ.P. 12(e). "Rule 12(e) provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of detail." *Resolution Tr. Corp. v. Gershman*, 829 F. Supp. 1095, 1103 (E.D. Mo. 1993). Plaintiff's Complaint is not unintelligible, and Defendant can be reasonably expected to frame a response to those claims which are not dismissed. The Motion for a More Definite Statement is denied.

## Conclusion

Defendant's Motion to Dismiss as to Plaintiff's copyright claim (Count I) is granted. Plaintiff will be given leave to file an Amended Complaint in accordance with this Opinion. The Motion as to the remaining claims (Counts II-IV) is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 40] is **GRANTED** as to Count I and **DENIED** as to Counts II, III, and IV.

**IT IS FURTHER ORDERED** that Plaintiff is given 14 days from the date of this order to file an Amended Complaint.

**IT IS FURTHER ORDERED** that Defendant's Motion for a More Definite Statement is denied.

Dated this 10th day of May, 2018.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE